**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

DAWN SCOTT-IVERSON,

        Plaintiff,                  13-CV-0451-A(Sr)
    v.                                 **DECISION AND ORDER**

INDEPENDENT HEALTH ASSOCIATION,

        Defendant.
_____

      The Plaintiff in this case is an African-American woman who alleges that her former employer, Defendant Independent Health Association, discriminated against her on the basis of race and sex by permitting a hostile work environment to exist.  The Defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Magistrate Judge Schroeder, to whom the Court referred the case for all pre-trial matters and to hear and report upon dispositive motions, filed a Report and Recommendation (R&R), Dkt. No. 18, that recommends: (1) granting the Defendant's motion as to Plaintiff's cause of action alleging retaliation; and (2) denying the Defendant's motion as to the Plaintiff's two causes of action alleging a hostile work environment.

      The Plaintiff did not file objections to Judge Schroeder's recommendation that her retaliation claim be dismissed.  The Court must therefore review that recommendation for clear error.  *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) ("If no objections are filed, or where objections are merely perfunctory responses . . . reviewing courts should review a report and

1

recommendation for clear error.") (internal quotation marks omitted).  Finding none, the Court adopts the R&R's recommendation that Plaintiff's cause of action for retaliation be dismissed.

The Defendant filed objections to the remainder of the R&R.  Dkt. No. 21.  Plaintiff filed a response and oral argument was held on June 23, 2014.  Upon de novo review of the portions of the R&R to which the Defendant objected, and after hearing argument from the parties, the Court adopts the remainder of the R&R.  The Court therefore grants the Defendant's motion to dismiss only as to Plaintiff's third cause of action, alleging retaliation.  Plaintiff's first and second causes of action, alleging a hostile work environment on the basis of sex and race, may proceed.

## Discussion

Because this case is before the Court on the Defendant's motion to dismiss, the Court must "accept[] as true the complaint's factual allegations and draw[] all reasonable inferences in the plaintiff's favor."  *New York Life Ins. Co. v. United States*, 724 F.3d 256 (2d Cir. 2013).  The Plaintiff's hostile work environment claims revolve around a series of alleged comments and acts attributed to Plaintiff's co-workers and supervisors.  Those allegations are as follows:[1]

---

[1] For the sake of convenience, the Court will refer to each factual allegation using the paragraph numbers assigned by Plaintiff's complaint.

¶ 24. In approximately October 1999, [one of Plaintiff's co-workers] purported to express concern to Plaintiff . . . about her children on a day when the Buffalo School District closed due to snow when most adjacent, suburban school districts remained open.

¶ 25. Plaintiff . . . had to explain . . . to that colleague that not all African-Americans live in the City of Buffalo, and her children were attending school that day in the Sweet Home School District, as she and her family reside in the Town of Amherst.

¶ 26. In approximately October 1999, [the Defendant] held an employee appreciation day around Halloween and [one of Plaintiff's co-workers] dressed up as "Aunt Jemimia," an offensive racial stereotype of the antebellum American South. This offensive, racist display was made in the presence of Plaintiff . . . .

¶ 27. In approximately April 2000, an [employee of Defendant] saw her husband's newly purchased Mercury Mountaineer and asked Plaintiff if her husband was "a drug dealer."

¶ 28. In approximately 2005, [one of Plaintiff's co-workers, L.M.], a white female, expressed reluctance to Plaintiff . . . about visiting a client located on Doat Street in the City of Buffalo.

¶ 29. [Co-worker L.M.] said she was "uncomfortable even driving in that part of town" and suggested that Plaintiff . . . should service that account because she would "better fit in."

¶ 30. In approximately 2005, [co-worker L.M.], told Plaintiff . . . that she is "not comfortable around black people" because of a high-school incident in which she felt she had been victimized by other African-American students and that Plaintiff . . . would "have to prove herself to her." No remedial action was taken when the complaint was made despite the fact that [the co-worker] was a peer and had no authority over the Plaintiff.

¶ 31. From approximately June 2007 to May 2008, Defendant . . . routinely sent Plaintiff . . . to service accounts which had a large number of African-American employees as she was the only African-American Account Manager during her employment [with the Defendant].

¶ 32.  In approximately June 2007, an example of this race-based assignment policy is Defendant . . . assigning Plaintiff . . . to service Community Action Organization of Western New York, as a majority of that organization's employees were African-American.

¶ 33.  In approximately June 2007, [the Defendant's] employees prominently displayed an image of a nude African-American woman on the back of [one of the Defendant's] maintenance truck [which was] operated by an African-American male.  This offensive, racist display was made in the presence of Plaintiff . . . .  No remedial action was taken when a complaint was made.

¶ 34.  In approximately 1999, [one of Defendant's] employee[s] commented that the internal heat in the office was "hotter than Africa" and inserted a silver binder ring into her nose as a parody of the oversized nose rings portrayed in the media as emblematic of bush women in Sub-Saharan Africa.  This offensive and racist display was made in the presence of Plaintiff . . . .

¶ 35.  In approximately June 2011, several [of Defendant's] employees compared Plaintiff's posterior to that of another, female . . . employee and offered the Plaintiff the results of their consensus opinion.

¶ 36.  On numerous occasions from approximately 2002 to 2012, [Plaintiff's co-worker, J.M.] routinely played a video clip form the 1974 movie "Blazing Saddles" on his computer.  The clip he played over and over was a scene in which the protagonists, the white deputy, played by Gene Wilder and the African-American Sheriff, played by Clevon Little, were hiding from members of the Ku Klux Klan.  The Sheriff then came out of hiding and called out, "hey, where are all the white women at?"  This offensive, racist display was made in the presence of Plaintiff . . . .  No remedial action was taken when a complaint was made.

¶ 37.  On numerous occasions from approximately 2002 to 2013, on occasions when spouses were present at company-sponsored events, . . . [co-worker J.M.] would comment to Plaintiff . . . that he wanted to follow her husband into the Men's Room because "black men are hung and I want to see what he has."

4

¶ 38. In approximately August 2003, Plaintiff . . . was asked to pose for an advertisement for Defendant . . . in an employment journal because they "needed a black face."

¶ 39. In approximately February 2008, Plaintiff . . . was demoted from Group Sales (Large) to Group Sales (Small), the only employee in the group who suffered a demotion. [The Defendant's] employees commented that [Plaintiff] only had her job at all . . . "because she was black" and that [the Defendant] needed "someone black" in that position.

On its motion to dismiss, the Defendant primarily makes two arguments: (1) that Plaintiff's allegations of discrimination on the basis of race and sex, described above, are time-barred; and (2) that most of Plaintiff's allegations of discrimination have not been administratively exhausted. "As a precondition to filing a Title VII claim in federal court, a plaintiff must pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). Although employees must ordinarily make an administrative complaint within 180 days of the allegedly illegal employment practice, if the employee "initially institute[s] proceedings with a State or local agency," the time period extends to 300 days. 42 U.S.C. § 2000e-5(e)(1) (2012). Here, the Plaintiff first filed an administrative charge with the New York State Department of Human Rights (NYSDHR) on April 24, 2012. *See* Dkt. No. 14-1. Thus, the R&R held, and the parties do not dispute, that the only timely discriminatory acts are those that occurred 300 days before April 24, 2012, that is, on or after June 29, 2011. Dkt. No. 18 at 8.

5

Of the numerous factual allegations recounted above, only one—the *Blazing Saddles* allegation contained in ¶ 36 of Plaintiff's complaint—occurred after June 29, 2011 and was also expressly exhausted in Plaintiff's NYSDHR complaint.  The Defendant is therefore correct that the remainder of Plaintiff's factual allegations, if alleged as discrete acts of discrimination, would be time-barred and/or unexhausted and would accordingly be subject to dismissal.  However, in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court clarified that in cases alleging a hostile work environment, such as this one, an employee must timely exhaust only *one* of the acts that constitute a hostile work environment claim.  According to *Morgan*, "[g]iven . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.  In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Id.* at 117.  Thus, as the Second Circuit has noted, "[u]nder *Morgan*, a sexually [or racially] offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related.  'It does not matter whether nothing occurred within the intervening . . . days so long as each act is part of the whole.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) (quoting *Morgan*, 536 U.S. at 118).

Thus, the relevant inquiry under *Morgan* is whether the timely administrative charge is "sufficiently related" to the otherwise untimely factual allegations in Plaintiff's complaint. That is, if the untimely allegations are sufficiently related to the timely allegation, the untimely allegations may be considered as part of a cause of action alleging a hostile work environment. As should be obvious, a *Morgan* analysis is not amenable to hard-and-fast rules. Instead, as the Second Circuit observed in *McGullam*, *Morgan* "requires courts to make an individualized assessment of whether incidents and episodes are related. *Morgan* . . . does not limit the relevant criteria, or set out factors or prongs." *McGullam*, 609 F.3d at 77. However, in a helpful concurrence, Judge Calabresi identified several factors that courts "have attempted to identify . . . . that should guide the *Morgan* 'relatedness' inquiry." *Id.* at 81 (Calabresi, J., concurring). Although the list of factors is, of course, not exhaustive, courts have considered whether "pre- and post-limitations period incidents" were "separated by an intervening action by the employer," e.g., whether the employee was transferred; whether the incidents "were of a different nature"; and whether the incidents "were separated by a significant amount of time." *Id.* at 81.

In this case, the Court concludes that the pre-limitations period allegations in Plaintiff's complaint are sufficiently related to the post-limitations period allegation and, therefore, may be considered as part of Plaintiff's hostile work environment claims. The most significant factor leading the Court to this conclusion is that the pre-limitations allegations are all generally of the same

nature as the post-limitations *Blazing Saddles* allegation.  That is, like the *Blazing Saddles* allegation, a number of the pre-limitations allegations involve comments and acts that turn on offensive stereotypes about African-Americans in general and African-American women in particular.

     The Court recognizes, as the Defendant has noted, that some of the predicate acts for Plaintiff's hostile work environment claims stretch back to 1999.  However, the allegations continue over the next 13 years and are regular enough to conclude, at least at this juncture, that they may have been part of the same pattern of discrimination alleged in Plaintiff's timely administrative charge.  The fact that there may be gaps of several years between some allegations is not necessarily fatal; an "incident-free interval does not preclude relatedness," although it may "render[] less plausible" the possibility that several comments or acts are related.  *McGullam*, 609 F.3d at 78.  However, as is the case here, where the purportedly disparate acts are numerous and of the same nature, the "incident-free interval[s]" do not undermine Plaintiff's claim.  This is particularly true where one of Plaintiff's allegations—the *Blazing Saddles* allegation—is alleged to have occurred on "numerous occasions from approximately 2002 to 2012." Dkt. No. 1 ¶ 36.  On a motion to dismiss, the Court must draw reasonable inferences in Plaintiff's favor.  Particularly given the severity and regularity of the other comments and acts that Plaintiff alleges, Plaintiff is entitled, at this stage of the litigation, to the reasonable inference that the *Blazing Saddles* video was played with sufficient frequency to support a cause of action for hostile work

environment.  The Court therefore concludes that Plaintiff's pre-limitations period allegations are sufficiently related to her post-limitations period allegation to state a cause of action for hostile work environment in violation of Title VII.

In reaching this conclusion, the Court is guided primarily by the principal that "there is no precise test for determining whether conduct is severe or pervasive enough to constitute a hostile work environment . . . ." *Williams v. New York City Housing Auth.*, 154 F. Supp. 2d 820, 822 (S.D.N.Y. 2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  In other words, this is a fact-bound area of law that is particularly ill-suited to dismissal at the pleading stage.  *Cf. Allen v. Egan*, 303 F. Supp. 2d 71, 79 (D. Conn. 2004) ("Determining whether the events comprising the basis for [plaintiff's] claim are part of a single, continuing course of conduct is fact-intensive, and therefore inappropriate at this stage of the proceedings.  Defendants may, of course, re-assert this defense in a properly supported motion [for summary judgment].").  The Defendant may not short-circuit discovery simply because it thinks that it will ultimately prevail on the merits.

## **Conclusion**

The Court adopts Judge Schroeder's report and recommendation.  For the reasons set forth in the report and recommendation, as well as those set forth above, the Defendant's motion to dismiss, Dkt. No. 5, is granted in part and denied in part.  Plaintiff's first and second causes of action, alleging a hostile work environment on the basis of race and sex, may proceed.  Plaintiff's third

cause of action, alleging retaliation, is dismissed.  The case is referred back to Judge Schroeder for further proceedings.

**SO ORDERED.**

                s/ Richard J. Arcara_____

                HONORABLE RICHARD J. ARCARA
                UNITED STATES DISTRICT JUDGE

DATED: July 7, 2014