UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWN SCOTT-IVERSON,

                                    Plaintiff,

            v.

INDEPENDENT HEALTH ASSOCIATION, INC.,

                                    Defendant.
_____

**AMENDED
DECISON
and
ORDER**

**13-CV-451V(F)**

APPEARANCES:            FRANK T. HOUSH, ESQ.
                        Attorney for Plaintiff
                        70 Niagara Street
                        Buffalo, New York    14202

                        KAVINOKY & COOK, LLP
                        Attorneys for Defendant
                        R. SCOTT DeLUCA, of Counsel
                        726 Exchange Street, Suite 800
                        Buffalo, New York  14210


        In this Title VII action alleging race and gender discrimination, and retaliation, in

connection with Plaintiff's employment and eventual termination by Defendant,[1]

Defendant, by papers filed August 29, 2016 (Dkt. 112) moved to compel Plaintiff's

presence at a continuation of her deposition for an additional three hours and sixteen

minutes for a total of a full four days (28 hours) of deposition testimony by Plaintiffs as

previously permitted by this court, and Plaintiff's answers to 11 questions put to Plaintiff

by Defendant at Plaintiff's prior deposition sessions which Plaintiff refused to answer.

_____
[1]  Plaintiff's allegations include receiving less compensation because of her race, African-American, assignment to racially identifiable client accounts of Defendant, a large regional health insurance company, racially disparaging comments and conduct by co-workers, including wearing an Aunt Jemima costume at an office party, suggestions that Plaintiff's husband may be a drug dealer, comments that the office temperature was "hotter than Africa," playing a video of a well-known movie, "Blazing Saddles," which includes numerous examples of racially explicit language and sexually suggestive behavior, engaging in an office "game" involving possible sexual involvements between male and female co-workers, and references to Plaintiff's physical appearance.

Defendant also requests (3) sanctions, including civil contempt, against Plaintiff and Plaintiff's counsel for their conduct during the last six of Plaintiff's deposition sessions, March 28, April 5, 6, 13, 19 and 20, 2016, in violation of Fed.R.Civ.P. 30(c)(2), and the court's Guidelines For Discovery Depositions ("Deposition Guidelines") which were so ordered as part of the Scheduling Order, Dkt. 84, and the court's Civility Principles, http://www.nywd.uscourts.gov/rules-individual-local-federal, adopted September 28, 1998, a Fourth Amended Scheduling Order extending the time for filing dispositive motions ("Defendant's motion"), and Defendant's reasonable expenses, including attorneys fees, incurred in connection with Defendant's motion ("Defendant's motion").

In support, Defendant filed, on August 29, 2016, Attorney Declaration In Support Of Defendant's Motion For Contempt, Sanctions and Other Relief (Dkt. 112-1) ("DeLuca Declaration") together with exhibits A–I ("DeLuca Declaration Exh(s). __"). In opposing Defendant's motion, Plaintiff filed, on October 21, 2016, Affirmation In Opposition To Motion For Contempt, Sanctions, And Other Relief, And Demand For Oral Evidence (Dkt. 119) ("Plaintiff's Opposition") attaching exhibits A – G ("Plaintiff's Opposition Exh(s) __"). On November 4, 2016, Defendant filed Reply Attorney Declaration In Support Of Defendant's Motion For Contempt, Sanctions And Other Relief (Dkt. 120) ("DeLuca Reply Declaration") together with exhibits A – E ("DeLuca Reply Declaration Exh(s) __") together with Reply Memorandum of Law in Support of Defendant's Motion for Contempt, Sanctions, and Other Relief (Dkt. 121) ("Defendant's Reply"). Oral argument was deemed unnecessary. Based on the following, Defendant's motion should be GRANTED in part, and DENIED in part.

(1)   <u>Plaintiff's Remaining Deposition Time</u>.

As noted, Defendant first seeks to compel Plaintiff to appear for approximately

three and one-quarter hours (3 hrs. and 16 mins.) of deposition testimony.   DeLuca

Reply Declaration, Dkt. 120 ¶¶ 13, 15.[2]   The basis of this request is the court's prior

order, filed December 3, 2015, granting Defendant's motion to conduct Plaintiff's

deposition for up to four days  (Dkt. 77) ("the December 3, 2015 Order").   In accordance

with the December 3, 2015 Order, Plaintiff appeared for an initial deposition session on

February 17, 2016 but abruptly refused to appear for a second deposition session on

February 22, 2016 to which the parties had agreed, necessitating Defendant's motion,

filed February 22, 2016, to compel Plaintiff's further appearance to complete Plaintiff's

deposition in compliance with the December 3, 2015 Order which motion was granted

by the court in a Decision and Order on March 1, 2016 (Dkt. 83).   *See Scott-Iverson v.*

*Independent Health Association, Inc.*, 2016 WL 787961, at *1 (W.D.N.Y. Mar. 1, 2016)

("the March 1, 2016 D&O").   In accordance with the March 1, 2016 D&O, Plaintiff

appeared for six deposition sessions between March 28 and April 20, 2016.   DeLuca

Declaration ¶ 11.   However, as a result of late starting times, breaks, and disruptive

conduct by Plaintiff and Plaintiff's counsel during the further deposition sessions as

asserted in Defendant's motion, Defendant determined, based on the recorded times for

starting and completing Plaintiff's deposition sessions as noted in the related deposition

transcripts, DeLuca Declaration Exh. I, that Defendant is entitled to the additional time

requested by Defendant to complete Plaintiff's deposition required to achieve full

compliance with the December 3, 2015 Order as calculated in accordance with

Fed.R.Civ.P. 30(d)(1) (""Rule 30(d)(1)"), on the basis of seven hours of testimony per

---

[2]   Defendant originally calculated the total amount of Plaintiff's deposition testimony to date to be twenty-five hours and twenty-nine minutes.   DeLuca Declaration ¶ 18; DeLuca Declaration Exh. I.

day net of breaks, interruptions, and other delays.  *See United States ex rel. Baltazar v. Warden*, 302 F.R.D. 256, 267 (N.D.Ill. 2014) (citing *Condit v. Dunne*, 225 F.R.D. 100, 112 (S.D.N.Y. 2004 ("[O]nly the time taken for the actual deposition, not breaks, counts toward the 7 hours . . ..")); Amendment to Federal Rules of Civil Procedure (2000), 192 F.R.D. 340, 395 (stating that "only [deposition] time to be counted as the time occupied by the actual deposition").  Despite Plaintiff's initial opposition to Defendant's request, in response to Defendant's motion, Plaintiff does not contest that Defendant is entitled to 28 hours for deposition testimony; rather, Plaintiff's opposition is based on delays in the actual conduct of Plaintiff's deposition on the six days scheduled for this purpose which delays, according to Plaintiff, were attributable to Defendant's misscheduling of other matters and unexplained delays in the scheduled commencement of Plaintiff's testimony.  *See* Plaintiff's Opposition Declaration ¶¶ 12-26 (asserting Plaintiff was available for 30 hours and 19 minutes of deposition time).  However, although Plaintiff opposes Defendant's request, Plaintiff points to no evidence in the Plaintiff's deposition transcripts, DeLuca Declaration Exhs. A-G, contradicting Defendant's calculation of the approximately three and one-quarter hour short-fall in Plaintiff's actual deposition time as computed in accordance with Rule 30(d)(1).  *See* DeLuca Declaration Exh. I.  Nor does Plaintiff dispute Defendant's contention that under Rule 30(d)(1) only the time spent in taking a deposition witness's testimony counts toward the seven-hour per day maximum absent a stipulation or court order.  *See* Plaintiff's Opposition (*passim*). Accordingly, the court finds the record supports that Plaintiff's deposition may continue for up to an additional 3 hours and 16 minutes as Defendant requests in compliance with the December 3, 2015 Order, and Defendant's motion as to this request is therefore GRANTED.

(2)   <u>Plaintiff's Refusal To Answer Defendant's Questions</u>.

Defendant seeks to compel Plaintiff to answer 11 questions which Defendant asked Plaintiff during Plaintiff's April 5, 6, and 19, 2016 deposition sessions.  DeLuca Declaration ¶¶ 36a-f.  Specifically, during the April 5, 2016 deposition, Defendant's counsel ("DeLuca") asked Plaintiff a question regarding how Plaintiff's husband had been able to secure new employment with a local town following the loss of his prior private sector job.  Dkt. 112-4 at 186.  Upon Plaintiff's counsel's objection, direction to Plaintiff not to answer, and Plaintiff's counsel's accusation that DeLuca had "insulted" Plaintiff "and used racist language," Plaintiff refused to answer the question, Dkt. 112-4 at 187, and terminated the deposition session by leaving the deposition room.  *Id.* at 188.

During the next deposition session on April 6, 2016, DeLuca asked Plaintiff to identify which of her co-employees had made comments about Plaintiff's physical attributes, DeLuca Declaration at 16 (*i.e.*, Plaintiff's "breasts" and "buttocks") as Plaintiff had alleged in the Complaint.  Dkt. 112-5 at 134.  After initially responding by identifying three male employees, *id.*, Plaintiff refused to answer further questions on the subject, Dkt. 112-5 at 134, claiming DeLuca was attempting to "intimidate" her, *id.* at 135.  This question followed an extensive series of questions directed to Plaintiff's allegation that she and other female employees, including Plaintiff, were repeatedly 'evaluated' verbally by several male co-workers at Plaintiff's workplace as to their female physical attributes.  *See* Dkt. 112-5 at 105-133.  This subject was explored by Defendant's questions to Plaintiff covering the entire period of Plaintiff's employment from 1998 until her termination in 2012, beginning with Plaintiff's accusation directed to one of her former male co-employees, *see* Dkt. 112-4 at 45, during Plaintiff's preceding April 5,

2016 deposition session and, as to which Plaintiff testified, involved several other of

Plaintiff's former male co-employees.  Prior to Plaintiff's refusal, Plaintiff's counsel

("Housh") stated the question was DeLuca's attempt to "prolong this."  Dkt. 112-5 at

134.

Defendant also asserts nine instances during Plaintiff's April 20, 2016 deposition

session, where Plaintiff's unjustified refusal to answer Defendant's questions occurred.

DeLuca Declaration ¶ 36c-f.  In the first instance, Defendant had previously requested

Plaintiff to recall the circumstances of a meeting which occurred on March 28 or 29,

2012 at which Plaintiff was terminated.  Dkt. 112-8 at 24-28.  After showing Plaintiff a

counselling memorandum, which Defendant represented had been the subject of a

meeting with Plaintiff in December 2010, Dkt. 112-8 at 31, and had been discussed with

Plaintiff at the December 2010 meeting, *id.* at 28, Plaintiff asserted she had not

previously seen the document suggesting it was created by Defendant after the fact.  *Id.*

at 29.  After Plaintiff reviewed the document, DeLuca asked about its contents,

particularly "an action plan," regarding Plaintiff's further  "performance," *id.* at 31, and

whether the document was discussed with her at the March 2012 termination meeting

and whether at the December 1, 2010[3] meeting with Plaintiff's supervisors, Plaintiff

complained that she was being unfairly treated, Dkt. 112-8 at 33, and refused to answer

DeLuca's questions regarding that Plaintiff had been given a "written warning" with

regard to her job performance at that time.  *Id.* at 33.  Following Plaintiff's counsel's

objection complaining that DeLuca's questions on this matter were excessive, Dkt. 112-

8 at 33, and that DeLuca continued to abuse and harass Plaintiff, *id.* at 34, when asked

again by Defendant if Plaintiff was "resistant to the counselling memo" Plaintiff again

---

[3]  The record is unclear whether this meeting took place on December 1, 2010 or 2011.  *See* Dkt. 112-8
at 31, 32, 33.

refused to answer implying she had previously answered the question.  Dkt. 112-8 at

34.  Further, immediately following Plaintiff's refusal to answer, Plaintiff was asked by

DeLuca about whether, upon Plaintiff's return to work after a leave of absence, she

complained to a supervisor that she had "returned to a hostile work environment?"  Dkt.

112-8 at 35.  Plaintiff responded that DeLuca was treating Plaintiff as "stupid" and

refused to answer DeLuca's repetitive "stupid questions," which were "wasting my

[Plaintiff's][4] time."  *Id.* at 35-36.  Plaintiff also refused, in response to Defendant's

question, to explain if she had complained to Defendant that she had returned to a

hostile work environment protected against by law.  *Id.* at 36.  Plaintiff further refused to

respond to DeLuca's request that she explain what Plaintiff meant in saying "this is why

they [Defendant] did this," Dkt. 112-8 at 37-38, stating that she refused to answer

"because I don't want to."  *Id.* at 38.  With reference to the counselling memorandum,

Plaintiff repeatedly refused to answer questions seeking Plaintiff's reasons for Plaintiff's

statement that she disagreed with specific assertions (presumably critical of Plaintiff's

job performance) in the document.[5]  Dkt. 112-8 at 38-40.  However, according the

deposition transcript, Plaintiff subsequently stated that the statements in the document

were fabrications and that she disagreed with "everything in [the] document."  *Id.* at 42.

Plaintiff also refused to respond to Defendant's questions which requested Plaintiff

explain why Plaintiff disagreed with specific statements in the memorandum, Dkt. 112-8

at 39, stating Plaintiff was "not going to continue to play this game with you [DeLuca]."

Defendant also points to Plaintiff's refusal to answer questions at Plaintiff's April 20,

2016 deposition session regarding Plaintiff's suggestions for better efficiency in

---

[4]  Unless indicated otherwise all bracketed material is added.
[5]  A copy of this document is not included in the record before the court on Defendant's motion.

providing Defendant's services to its clients.  Dkt. 112-1 ¶ 36f; Dkt. 112-7 at 213-14.[6]

Plaintiff stated she refused to respond because such ideas were her proprietary

property and should not be provided to Defendant without compensation.  *Id.* at 214.

Defendant's question was a follow-up to Plaintiff's self-evaluation in which Plaintiff

stated she was reluctant to provide these suggestions for fear of being "scolded" as

negative.  Dkt. 112-7 at 210.

A careful review of Plaintiff's Opposition reveals the absence of any specific

opposition by Plaintiff to Defendant's motion on this ground.  *See* Plaintiff's Opposition

(*passim*).  Instead, Plaintiff argues, as discussed, Discussion, *supra*, at 2-4, that

Defendant is not entitled to the additional time to complete Plaintiff's deposition as

Defendant requested (*see* Plaintiff's Opposition ¶ 4) ("Plaintiff consents to an additional

ninety minutes of testimony"), that Defendant improperly refuses to conduct

simultaneous discovery, Plaintiff's Opposition ¶¶ 27-33; 40-43, and that DeLuca

improperly assumed representation of Lisa Miles, a former Defendant employee and

Plaintiff's former co-worker, during her deposition, Plaintiff's Opposition Exh. G at 31-33,

to enable DeLuca to assert objections on Miles's behalf, contending that such

representation constitutes an ethical violation for the purpose of impeding Plaintiff's

questioning of the witness.  Plaintiff's Opposition ¶¶ 44-47.

It is well-established that a party is required to respond to all questions

propounded by a party conducting a deposition scheduled pursuant to Rule 30(a)(1)

when seeking relevant information.  *See Gordon v. Semrug*, 2016 WL 259578, at *1

---

[6]   Defendant refers to this issue as occurring at Plaintiff's April 20, 2016 deposition session, Dkt. 112-1 ¶ 36f; however, the record indicates it occurred at the April 19, 2016 session.  *See* Dkt. 112-7 at 213-14. The title page to DeLuca Declaration Exh. F, Dkt. 112-7 at 1, also appears to erroneously state the date of this deposition session as March 19, 2016; however, the sequence of the transcripts, DeLuca Declaration Exhs. A-G, indicates this deposition session occurred on April 19, 2016.

(W.D.N.Y. Jan. 21, 2016) (citing *Jones v. Niagara Frontier Transportation Authority*, 836 F.2d 731, 734-35 (2d Cir. 1987) (plaintiff's willful refusal to give deposition testimony warranted dismissal of plaintiff's action)); *Miller v. Time-Warner Communications, Inc.*, 1999 WL 739528, at **2-3 (S.D.N.Y. Sept. 22, 1999)).  Similarly, sanctions are available where a witness provides "evasive or incomplete answers."  Baicker-McKee, Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK, Thomson Reuters (2016) at 984.  When, during a deposition, a witness believes an examining party's questions constitute harassment, the proper procedure is to adjourn the deposition and apply to the court for relief pursuant to Fed.R.Civ.P. 30(d)(3)(A) ("Rule 30(d)(3)(A)") (party may seek judicial relief against unreasonable annoyance, embarrassment and oppression).  Thus, a witness may not refuse to answer deposition questions seeking relevant information absent a valid claim of privilege without judicial approval.  *See* Fed.R.Civ.P 30(c)(2) ("Rule 30(c)(2)") (witness may be instructed not to answer a question "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)").  Here, the record demonstrates that Plaintiff's repeated refusals to answer Defendant's questions at issue are based on Plaintiff's opinion that the questions did not seek relevant information, such as Plaintiff's refusal to answer Defendant's questions regarding possible efforts by Plaintiff's co-workers to assist Plaintiff's husband in obtaining employment, the identity of Plaintiff's co-workers and supervisors commenting on certain aspects of Plaintiff's physical attributes, the circumstances and documentation leading to Plaintiff's termination, the facts regarding Plaintiff's gender and race discrimination allegations in the Complaint and as described in greater detail during her deposition in response to Defendant's questions, Plaintiff's alleged prior complaints to Defendant regarding Plaintiff being required to function in a

racially and sexually hostile work environment, Defendant's request that Plaintiff provide

an explanation of Plaintiff's vague response to one of Defendant's questions directly

related to Plaintiff's allegations, and the facts underlying Plaintiff's assertion that Plaintiff

had, prior to her termination, provided Defendant with suggestions to benefit

Defendant's marketing to certain of Defendant's customers.   Plaintiff's numerous

statements asserting that Defendant's questions were unduly repetitive and personally

demeaning do not demonstrate Defendant's questions were directed to irrelevant

information; to the contrary, as the record plainly shows, the questions at issue appear

reasonably related to the basis for Plaintiff's claims of racial and gender-based animus

directed to Plaintiff through words and actions by Plaintiff's numerous co-workers and

supervisors as alleged in the Complaint, *see, e.g.,* Dkt. 67 ¶ 35 (unnamed employees

compared Plaintiff's posterior to that of another female employee) and asserted

repeatedly by Plaintiff during her April 5 and 6, 2016 deposition sessions, *see, e.g.*, Dkt.

112-4 at 45, 46, 48, 50; Dkt. 112-5 at 134.

For example, Defendant's questions regarding Plaintiff's physical attributes, to

which Plaintiff refused to further respond during the April 6, 2016 deposition session,

came after a series of questions directed to Plaintiff's specific allegations on this

subject, to which Plaintiff did not then object.   The court recognizes that Plaintiff may

have found this line of questioning distasteful, however, given that the subjects of

Defendant's questions were the basis of allegations in the Complaint, *see*, Complaint ¶

35, and Plaintiff's generalized claims of racial and gender discrimination over an

extended period of her employment, as described by Plaintiff during the deposition

session, Defendant's questions were fairly directed to obtaining information relevant to

Plaintiff's numerous discrimination claims and Plaintiff should therefore reasonably have

expected she would be questioned extensively about them.  Moreover, Plaintiff's prior

deposition testimony, to which Plaintiff did not object, describing these matters in some

detail was also reasonably necessary for Defendant to fully develop given the number of

individuals Plaintiff asserted were involved and the extended 13-year period – 1999-

2012 – over which the conducted allegedly occurred.  Accordingly, the court finds

Defendant's questions were directed to relevant matters and Plaintiff's refusal to fully

answer such questions was unwarranted.  The court turns to Plaintiff's contention, as

repeatedly stated by Plaintiff and Housh during the deposition session, *e.g.*, Dkt. 112-8

at 35-36 (accusing DeLuca of asking "stupid questions" which "wasted [Plaintiff's] time"),

that Plaintiff's refusals to answer Defendant's questions were justified by DeLuca's

improper examination conduct.[7]

Under Rule 30(d)(3)(A), examining counsel are expected to refrain from

questioning that creates "unreasonable annoyance, embarrassment or oppression."

*See United States ex rel. Baltazar*, 302 F.R.D. at 258 (defendant's abusive, repetitive,

and irrelevant conduct toward plaintiff, including accusing plaintiff of perjury, violated

Rule 30(d)(3)(A)); *Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 693 (S.D.Ga. 2013)

(counsel's "snarky, accusatory questions and innuendos," "threats of contempt," and

"insults" to the witness's "integrity," "character," and "education" violated Rule

30(d)(3)(A)); *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 644

(N.D.Ind. 1991) (where plaintiff's claims "portend a lengthy interrogation" "given the

incident-oriented nature of the evidence" of plaintiff's claims, court's review of deposition

---

[7]   Plaintiff does not specifically oppose Defendant's motion on this basis, *see* Plaintiff's Opposition
(*passim*), however, in the interest of completeness, the court nevertheless has reviewed the record to
determine whether DeLuca's examination of Plaintiff could have reasonably justified Plaintiff's refusals.

record did not "reveal a pattern of irrelevant inquiry or conduct by defense counsel calculated to unreasonably annoy, embarrass  or oppress deponent").

Here, the record reveals no abusive or oppressive conduct toward Plaintiff by DeLuca.  Given that Plaintiff is an African-American female alleging employment discrimination based on gender and race, a heightened sensitivity to Defendant's attempt to require Plaintiff to recount and particularize the misconduct upon which Plaintiff's claims are based is to be fairly expected.  However, in this case the unusually extensive nature of the repeated references to Plaintiff's physical attributes by several co-workers, Dkt. 112-4 at 45, 55, 121, 132, as alleged and  testified to in detail by Plaintiff demonstrates that Plaintiff's refusal to answer the subject questions came after Defendant, during the April 5, 2016 deposition session, Dkt. 112-4, examined Plaintiff as to whether Plaintiff's numerous other co-workers, male and female, had likewise expressed racially (Dkt. 112-4 at 27), or sexually (Dkt. 112-4 at 38), tinged comments directed to Plaintiff's physical attributes as, according to Plaintiff, had been done by two male co-workers, Marinaccio and Herman, specifically identified by Plaintiff.  Dkt. 112-5 at 134.  While it may be argued whether DeLuca's effort seeking further clarifications on this subject was entirely necessary, in context, it cannot be said that the questions constituted unreasonable annoyance, embarrassment or oppression to Plaintiff or were otherwise subject to objection for lack of relevancy.  Plaintiff's counsel belatedly accused DeLuca of belaboring these issues in order to make Plaintiff feel "uncomfortable" because of her race and gender, Dkt. 112-5 at 36; however, given the lengthy period of the alleged recurrent sexual and racial misconduct during Plaintiff's employment with Defendant attributed to many of her co-workers by Plaintiff, DeLuca's exhaustive efforts to seek such clarification does not support Plaintiff's objection.  *See*

*Smith*, 139 F.R.D. at 644 (where plaintiff's numerous incident-specific claims required lengthy deposition, detailed examination does not establish pattern of oppression).  If Plaintiff genuinely believed DeLuca was engaged in oppressive conduct, racially or sexually motivated, or intended to humiliate Plaintiff, in regard to the questions Plaintiff refused, without asserting a privilege, to answer it was incumbent upon Plaintiff to adjourn the deposition and promptly seek judicial assistance pursuant to Rule 30(d)(3)(A).  *See Smith*, 139 F.R.D. at 643 (if deponent believes examining counsel is conducting deposition in "bad faith" or is "being unreasonably annoyed, embarrassed or harassed," deponent should apply "immediately" for judicial intervention pursuant to Rule 30(d)(3)(A) (citing cases)).  No such relief was sought by Plaintiff.  In short, Plaintiff (and Plaintiff's counsel who should have counselled Plaintiff otherwise) decided, without sufficient grounds, which of Defendant's questions Plaintiff would answer, thereby interfering with DeLuca's ability to complete his examination of Plaintiff, contrary to the rules regarding the conduct of oral depositions under Rule 30(c)(2) and Rule 30(d)(3)(A).  Defendant's motion as to this issue is therefore GRANTED.

(3)   <u>Defendant's Request for Sanctions</u>.

As noted, Defendant also requests sanctions, including civil contempt, based on Plaintiff's failure to schedule and attend an additional deposition session of up to approximately three and one-quarter hours in order to fully comply with the December 3, 2015 Order, Plaintiff's failure to respond to 11 of Defendant's questions during the April 5, April 6, April 19, and April 20, 2016 deposition sessions, and repeated obstructive and improper conduct by Plaintiff and Plaintiff's counsel during several of Plaintiff's deposition sessions, specifically the March 28, April 5, 6, 13, 19 and 20, 2016 sessions. DeLuca Declaration at 12.  Defendant points to nine instances of such improper conduct

which occurred during Plaintiff's March 28, 2016 deposition session, *id.* ¶ 42a-g, five

instances of such misconduct during Plaintiff's April 5, 2016 deposition session, *id.*, ¶

43a-c; 25 instances at the April 6, 2016 session, *id.,* ¶ 44a-d, nine which occurred at the

April 13, 2016 session, *id.*, ¶ 45, 19 such instances during the April 19, 2016 session,

*id.*, ¶ 46a-d; and 25 instances of such misconduct during Plaintiff's April 20, 2016

deposition session.  *Id.*, ¶ 47a-e.

   Under Rule 30(c)(2) objections to deposition questions are to be stated concisely

and in a non-argumentative manner, and a deponent may not be advised not to answer

a question except in order to preserve a privilege, enforce a court imposed limitation, or

to seek judicial relief pursuant to Rule 30(d)(3).  Further, under this court's Deposition

Guidelines, which were "So Ordered," and are thus enforceable in accordance with

Fed.R.Civ.P. 16(f)(1)(C) (court may order sanctions pursuant to Fed.R.Civ.P.

37(b)(2)(A)(ii-vii) for violation of a pretrial order) ("Rule 16(f)(1)(C)"); *see Kyntec*

*Corporation v. ITT Enidine, Inc.*, 2016 WL 1611358, at *4 (W.D.N.Y. April 21, 2016)

(attorneys fees awarded against defendant's counsel for violation, by filing motion to

dismiss, of pretrial order directing a stay of proceedings pending completion of patent

reexamination without court approval) (citing caselaw), counsel are prohibited from

making objections suggestive of a response by a witness (Guideline No. 4), and neither

a witness nor the witness's attorney shall engage in argument with examining counsel

regarding a question; instead the witness's attorney is required to state an objection

succinctly on the record and allow the witness to answer (Guideline No. 11).  *See also*

*Hall v. Clifton*, 150 F.R.D. 525, 530 (E.D.Pa. 1993).  Additionally, the Deposition

Guidelines may be enforced by imposition of a fine.  *See Jones v. J.C. Penney Dept.*

*Stores, Inc.*, 228 F.R.D. 190, 198 (W.D.N.Y. 2005) (plaintiff's attorney subject to fine for

violating court's Deposition Guidelines and Rule 30(d)(1) (renumbered Rule 30(c)(2))).

Significantly, Plaintiff does not contest that the conduct Defendant points to in the record

occurred, nor does Plaintiff argue that any of the numerous instances of such conduct

cited by Defendant do not violate Rule 30(c)(2) and the court's Civility Principles or the

applicable Deposition Guidelines.  Although the court's Civility Principles may not be the

basis for sanctions,[8] several of these principles appear applicable to the cited instances

of misconduct by Plaintiff and Plaintiff's attorney, particularly Lawyers' Duties to Other

Counsel Principle No. 2 which states that attorneys practicing before this court shall

"abstain from disparaging personal remarks or acrimony toward other counsel . . .,"

Principle No. 4 which enjoins counsel from, in the absence of "good cause," attributing

"bad motives or improper conduct to other counsel," and Principle No. 20 which

prohibits "any conduct during a deposition that would not be appropriate in the presence

of a judge."  While, as stated, Discussion, *supra*, at 15 n. 8, not available as a ground

upon which to apply sanctions, the Civility Principles are highly persuasive in guiding

the court's evaluation of allegedly unprofessional misconduct by counsel during the

course of litigation.  *See Pitzer v. Groth*, 2005 WL 1838450, at *3 & n. 2 (E.D.Mich. July

29, 2005) ("the Civility Principles provide a guide to all filings" and failure to comply may

result in offensive documents being stricken).

At the outset, the court notes that Plaintiff has not disputed that the plethora –

92 – of unnecessary interruptions of Defendant's examination by Plaintiff and Housh, as

revealed in the record, occurred, nor that such disruption constituted violations of Rule

30(c)(2), the Deposition Guidelines and Civility Principles.  *See* Plaintiff's Opposition

(*passim*).  In considering whether to impose sanctions related to discovery misconduct

---

[8]  Defendant also asserts Plaintiff's and Plaintiff's counsel's conduct violated the court's Civility Principles; however, these principles do not provide a basis for sanctions.  *See* Civility Principles Preamble ¶ 6.

courts have broad discretion.  *See Few v. Yellowpages.com, LLC*, 2014 WL 3507366,

at *3 (S.D.N.Y. July 14, 2014) (citing caselaw).  As Defendant does not contend (and

the record so demonstrates) that despite the numerous instances of Plaintiff's and

Plaintiff's counsel unduly contentious interruptions and responses to Defendant's

questions over the course of six deposition sessions Defendant was unable to

substantially complete Defendant's deposition questioning at these sessions, the court

will limit its consideration to those occasions involving what the court deems the most

substantial violations by Plaintiff and Plaintiff's counsel which, in the court's opinion,

obligates the court to impose sanctions to obtain compliance by counsel with Rule

30(c)(2) and the Deposition Guidelines in this case and deter potential similar

misconduct in future cases, as follows:

- The March 28, 2016 Session.

In response to DeLuca's request that Plaintiff produce a log ("journal"), Dkt. 112-

3 at 15, or record of Plaintiff's activities following her employment with Defendant, Dkt.

112-3 at 15, which Plaintiff refused to produce, Housh objected and, after calling

DeLuca's request "absurd," Housh went on to accuse DeLuca of attempting to "use the

discovery [request] to harass and badger my client, presumably because you are a

racist." Dkt. 112-3 at 16 (underlining added).[9]  On its face, Housh's outburst, wholly

unprovoked based on the court's review of the record, *see* Dkt. 112-3 at 5-16, by

anything DeLuca had said up to this point, constitutes improper argument in connection

with a simple objection, apparently one based on a perceived lack of relevance by

Housh, in violation of Deposition Guideline No. 4 ("counsel's statements when making

objections should be succinct and verbally economical, stating the basis of the objection

---

[9]   Unless indicated otherwise all underlining is added.

and nothing more"), and Deposition Guideline No. 10 ("counsel for a witness shall not engage in any argument with examining counsel as to the objectionability of any question.  Rather, he may note his objection and permit the witness to answer the question, subject to the objection.").  Additionally, although not a basis for sanctions under the court's Civility Principles, Housh's impugning of DeLuca as a "racist" constitutes a clear and unmitigated violation of Civility Principle – Lawyers' Duties to Other Counsel No. 2 ("We will abstain from disparaging personal remarks or acrimony toward other counsel . . ..").  Such aspersions have no place in the litigation process and cannot be tolerated.  Merely questioning a plaintiff regarding the basis for alleging race discrimination does not mean examining counsel is a racist or harbors racial animus toward the witness.  Significantly, Plaintiff points to nothing in the record to justify these violations.  Whether DeLuca's request sought irrelevant material, or, in Plaintiff's view, constituted harassment, is an issue that could have been presented to the court by Plaintiff pursuant to Rule 30(d)(3)(A) but, as noted, Discussion, *supra*, at 13, Plaintiff failed to do so.  Further, DeLuca's straightforward request for the information or record, to which Plaintiff had called Defendant's attention by her initial response, did not constitute badgering of Plaintiff, and it certainly did not bespeak any form of racial bias.  Later, during this same deposition session, Housh objected to a question DeLuca asked of Plaintiff as to why, as Plaintiff had testified, she believed she had not been invited to an employee golf outing because of her race.[10]  Dkt. 112-3 at 96.  This question followed a series of questions to Plaintiff concerning her view that various co-workers harbored racially prejudiced opinions about "black people," Dkt. 112-3 at 92, like Plaintiff.  *See* Dkt. 112-3 at 86-96.  Instead of answering the question, a

---

[10]   The date of this incident is not apparent from the record.

break was taken, and before resumption of Plaintiff's deposition testimony, Housh

accused DeLuca of making "rude and condescending and racist remarks and continues

to behave in a way that is offensive to my client" and that DeLuca's questions "trivializes

her [Plaintiff's] previous testimony and her as an individual."  Dkt. 112-3 at 96-97.

However, as noted, Plaintiff does not point to any language or conduct by DeLuca

denoting such racial prejudice or trivialization of Plaintiff nor does Plaintiff dispute the

numerous citations to the record in Defendant's motion on this issue, and the record

does not show that Plaintiff moved to terminate the deposition or for judicial relief

pursuant to Rule 30(d)(3).  Nor does the court's review of the transcript reveal any

questioning by DeLuca from which such prejudice toward Plaintiff could reasonably be

inferred.  Accordingly, the court finds Housh's conduct on this occasion in violation of

Rule 30(c)(2) and the court's Deposition Guidelines Nos. 4 and 10 as well as Civility

Principle No. 2.  A similar improper interruption by Housh occurred when Housh again,

approximately 35 minutes later, accused DeLuca of questioning Plaintiff in an attempt to

trivialize her testimony in an "offensive and racially motivated" manner, Dkt. 112-3 at

124-25, for a total of three (3) such violations at this session of Rule 30(c)(2) and

applicable Deposition Guidelines that the court finds are subject to sanctions.  The court

finds the remaining speaking objections, DeLuca Declaration at 13, 14, 15, by Housh to

be insubstantial violations of Rule 30(c)(2) and the applicable Deposition Guidelines.

● The April 5, 2016 Deposition Session.

When DeLuca attempted to ask Plaintiff about improper gender-based comments

directed to her by one of her supervisors, Housh interjected an answer, in violation of

Rule 30(c)(2) and Deposition Guideline No. 3 (counsel shall not make "statements

which might suggest an answer"), *see* Dkt. 112-4 at 36-37, when Plaintiff was unable to

give one.  Two other instances cited by Defendant of improper argument by Housh with respect to Defendant's questions regarding Plaintiff's allegations of improper sex-based workplace conduct occurred during this deposition session, *see* Dkt. 112-4 at 44-45 and at 47, for a total of three violations of Rule 30(c)(2) and the Deposition Guidelines subject to sanctions at this session.

- The April 6, 2016 Deposition Session.

Numerous violations by Housh of Rule 30(c)(2) and the Deposition Guidelines prohibition, specifically Guideline No. 4, prohibiting speaking objections and undue argumentation, at this deposition session are also reflected in the record, *see* Dkt. 112-5 at 27 ("You're asking an African-America woman why she felt that an Aunt Jemima costume was offensive?"), 91 (accusing DeLuca of "engaging" in a "pattern of harassment and abuse" and asking Plaintiff why a photo of nude African-American woman on Defendant's maintenance truck was "offensive to her"), 126 (DeLuca "abusing" Plaintiff), 131 (Housh complaining about DeLuca's "badgering" Plaintiff with repetitive questions), 132 (Housh complains about DeLuca's repetitive questions stating "I'll do whatever I want" in responding to DeLuca's request that Housh abide by the Deposition Guidelines), 135-36 (complaining about DeLuca's repetitive questions), and 266 (Housh arguing over nature of DeLuca's questions), for a total of eight violations of Rule 30(c)(2) and applicable Deposition Guidelines subject to sanctions at this session.

- The April 13, 2016 Deposition Session.

The record of this deposition session shows Housh violated both Rule 30(c)(2) and the court's Deposition Guidelines No. 4 (prohibiting extended objections), No. 10 (prohibiting argumentative objections), and No. 11 (no comments to examining counsel with regard to the nature of a question) as follows:  Dkt. 112-6 at 46 (DeLuca asking

repetitive questions), 67 (Deluca "harassing" Plaintiff), 71-72 (question "harassing"), 75 (question "inappropriate and harassing"), 90-91 (disputing Defendant's questions), 118-19 (accusing DeLuca of harassing Plaintiff), and 139 (question intended to "harass" Plaintiff).  The court finds the remaining violations, Dkt. 112-6 at 71 and 128, asserted by Defendant, *see* DeLuca Declaration at 18, to be insufficient to warrant sanctions.

● The April 19, 2016 Deposition Session.

After discussion of Plaintiff's need, earlier than DeLuca had expected, to adjourn the deposition to attend Plaintiff's doctor's appointment, Dkt. 112-7 at 4, Housh launched into an unprovoked and lengthy verbal attack on DeLuca stating in relevant part that DeLuca had used the discovery process to "abuse and humiliate[e] my client [Plaintiff]" and had "demonstrated extremely rude and racist behavior and you [DeLuca] continue to do so."  Dkt. 112-7 at 5.  Further, Housh accused DeLuca of "incompetence" in his calculation of the amount of time Plaintiff's deposition had consumed at that point. Dkt. 112-7 at 6-7.  Approximately one minute later, Housh again accused DeLuca of "abuse" of Plaintiff and making "racist remarks."  Dkt. 112-7 at 8.  At this deposition session, Housh also repeatedly violated Rule 30(c)(2) and the Deposition Guidelines prohibiting unduly argumentative objections, *see* Dkt. 112-7 at 63 (DeLuca "harassing" Plaintiff), 76 (DeLuca asked same question "close to a hundred times"), 80-81 (accusing DeLuca of "trying to trick" Plaintiff; Housh insisting he can "talk to" his client during deposition), 97 (Housh characterizing Plaintiff's testimony and interrupting DeLuca's question), 104 (Housh arguing over nature of DeLuca's questions), 143-46 (Housh engages in lengthy argument whether to assert attorney-client privilege and accusing DeLuca of making several unnecessary motions for sanctions), 154-58 (accusing DeLuca of argumentative questions), 186 (asserting continued harassment of Plaintiff

by DeLuca), and 190-91 (accusing DeLuca of "rolling his eyes" in reaction to Plaintiff's

answer), for a total of 12 violations subject to sanctions.  While Defendant points to

numerous other instances of similar violations at this session, *see* Dkt. DeLuca

Declaration at 20, the court finds them too insubstantial to warrant sanctions.

●       The April 20, 2016 Deposition Session.

Upon learning from Plaintiff, in response to Defendant's routine preliminary

questions, that she may have discussed her prospective deposition testimony for that

session with her husband, Defendant sought to inquire as to the nature of such

conversation, Dkt. 112-8 at 8, which prompted Housh to again accuse DeLuca of

attempting to "harass and humiliate" Plaintiff as "punishment for petitioning the courts"

and admonishing DeLuca that as a result of DeLuca's conduct "there will be a price."

Dkt. 112-8 at 9.  When DeLuca asked if Housh's statement constituted a threat, Dkt.

112-8 at 10, Housh declined to answer and instead informed DeLuca that "there's such

a thing in this word [*sic*] called karma" and if DeLuca "were a man of faith" he, DeLuca,

would "consider your actions before you do them."  Dkt. 112-8 at 10.  Not only does

such a unnecessary reference to DeLuca's religious beliefs, or any implied lack thereof,

constitute a violation of Rule 30(c)(2), the court's Deposition Guideline No 11 (no

argument regarding nature of question), as well as the court's Civility Principle No. 1

(requiring lawyers to avoid "prejudice based on . . . religion)," and Principle No. 2

(requiring lawyers to "abstain from disparaging personal remarks or acrimony toward

other counsel"), but it represents another unexcused breach of the boundary between

acceptable and unacceptable litigation conduct by Housh during Plaintiff's deposition

sessions, justifying sanctions.  Apparently recognizing he had done so, and after being

confronted by DeLuca, Housh apologized.  Dkt. 112-8 at 7, 10-11.  In light of Housh's

prompt and apparently sincere apology the court will not apply a sanction on the basis

of this violation.  Additional violations by Housh of Rule 30(c)(2) and the Deposition

Guidelines occurred during Plaintiff's deposition session, *see* Dkt. 112-8 at 8

(questioning DeLuca's right to inquiry regarding Plaintiff's predeposition discussion with

her husband), 19 ("continuing harassment" of Plaintiff), 30 (arguing with DeLuca over

repetitive questions), 33-34 (challenging DeLuca's questions to Plaintiff regarding a

document), 34 (accusing DeLuca of abusing Plaintiff), 40 (arguing propriety of DeLuca's

questions and explaining Plaintiff's response), 41 (commenting on DeLuca's question

and interrupting Plaintiff's answer), 46 (interrupting DeLuca's questions claiming

argumentativeness), 53 (argumentative objection and interrupting Plaintiff's answer), 65

(interrupting DeLuca's questions and questioning DeLuca's decision to examine Plaintiff

on subject), 94 (interrupting DeLuca's questioning to complain about DeLuca's

"accusatory" "tone"), 104 (questioning DeLuca's discussion of expected time needed to

conclude deposition), 105 (interrupting DeLuca's examining of Plaintiff re: document

complaining that DeLuca's questions were unnecessarily detailed), 112 (objecting

based on DeLuca's "tricky" questions), 116 (attempt to assist Plaintiff in answering

question), 122 (accusing DeLuca of trying to "hassle" Plaintiff in regard to responding to

Defendant's request for documents), 143 (interrupting and commenting on DeLuca's

question regarding Plaintiff's subsequent employment and Plaintiff's damages), 147

(argumentative objection and accusing DeLuca of attempt to "abuse and humiliate"

Plaintiff), 174-75 (three instances of accusing DeLuca of "attempt[ing] to humiliate"

Plaintiff in pursuing questioning Plaintiff about Plaintiff's emotional distress allegations),

175 (two instances of argumentative objections), and 177 (challenging DeLuca's

decision to question Plaintiff regarding treatment by a physician), for a total of 24 such

violations subject to sanctions.  The court has reviewed the remainder of Defendant's asserted violations by Housh at this session and finds them too insubstantial to warrant sanctions.

Courts are authorized to impose sanctions for attorney misconduct during depositions.  *See* Fed.R.Civ.P. 30(d)(2) ("[c]ourt may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent.").  "In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer."  Advisory Committee Note to 1993 Amendment to Rule 30(d).  "The making of unnecessary objections may itself constitute sanctionable conduct . . .."  *Id.*  In addition, courts have inherent power to "'fashion an appropriate sanction for conduct which abuses the judicial process.'"  *Ceglia v. Zuckerberg*, 600 Fed.Appx. 34, 36, 37 (2d Cir. Apr. 20, 2015) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991)), provided the challenged actions were without a colorable basis and motivated by improper purposes such as harassment or delay, *id.* (citing *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995) (quoting *Oliveri v. Thompson*, 803 F.3d 1265, 1272 (2d Cir. 1986))), and are based on factual findings of bad faith.  *Id.*

Here, the record amply demonstrates Housh's repetitive failures, without justification, to abide by Rule 30(d)(2) and the court's Deposition Guidelines including repeated accusations of  racism and harassment of Plaintiff by DeLuca, unsupported by anything attributable to DeLuca appearing in the transcripts of Plaintiff's six deposition sessions to date.  As such, the record shows Housh engaged in 56 unwarranted interruptions and objections over the six deposition sessions of Plaintiff conducted to

date which can only be interpreted as a continuous series of ill-motivated attempts to disrupt and interfere with DeLuca's ability to conduct Plaintiff's deposition and elicit relevant testimony responsive to DeLuca's questions.  Whatever Housh's motivation, whether to frustrate DeLuca or assure Housh's client of his zealousness in defending Plaintiff's deposition, the overall effect constituted a wholly improper effort to undermine the conduct of Plaintiff's deposition warranting the imposition of a reasonable fine for each occurrence, *see Jones*, 228 F.R.D. at 198, rather than a finding of contempt and sanctions such as precluding Plaintiff's testimony or dismissal of the Complaint pursuant to Rule 37 as Defendant requests, as an appropriate sanction in the circumstances of this case.  *See Jones,* 228 F.R.D. at 198 (declining to impose sanctions pursuant to Rule 37(b)(2) where plaintiff's attorney's deposition violations resulted in "no substantial prejudice" to defendant's defense); *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292, 294 (S.D.N.Y. 1987) (fining offending plaintiff's attorney $250 to be paid to Clerk of Court for "abusive, obstructive, scurrilous, and insulting conduct" directed to defendant's attorney, by calling the attorney "a twit," during court-ordered deposition pursuant to court's inherent power and 28 U.S.C. § 1927 (prohibiting "vexatious" litigation practices)).  Most assuredly, as Housh's behavior, particularly his verbal assaults on DeLuca as a racist would not be tolerated in a courtroom, *see* Advisory Committee Note to 1993 Amendment to Rule 30(d), it will not be tolerated in any depositions in this case. Accordingly, pursuant to Rule 16(f)(1)(C), Rule 30(d)(2), and the court's inherent power, the court imposes a fine of $500[11] upon Housh for each of the four aspersions upon DeLuca's character as a "racist," or engaging in racially discriminatory examinations of Plaintiff, and a fine of $50 for each of the 56 violations of Rule 30(c)(2), and the

---

[11]   Based on a $250 fine in 1987 adjusted for inflation.  *See Unique Concepts, Inc.*, 115 F.R.D. at 294.

Deposition Guidelines subject to sanctions as determined by the court.  Because these violations did not destroy the value of the respective deposition sessions, it is not necessary to impose the cost of redeposing Plaintiff on Plaintiff or Housh, and Defendant makes no such request.

(4)    Plaintiff's Affidavit.

The court also addresses Plaintiff's Affidavit, Dkt. 119-2, filed in support of Plaintiff's Opposition which, in addition to averring that Plaintiff had fully complied with the December 3, 2015 Order, stated that "Mr. DeLuca's behavior demonstrates to me [Plaintiff] that he is without question a racist and a bully."  Dkt. 119-2 ¶ 21.  Defendant does not request the court to impose sanctions upon Plaintiff or Housh in connection with the filing of Plaintiff's Affidavit including this averment, DeLuca Reply Declaration ¶ 60, instead requesting, a "stern warning," id. ¶ 66, be issued.[12]  Irrelevant and obnoxious slurs and insults directed against opposing attorneys are subject to sanctions including a fine.  See Unique Concepts, Inc., 115 F.R.D. at 293 (attorney fined $250, pursuant to 28 U.S.C. § 1927 and court's inherent power, based on "insulting" reference to opposing counsel during the deposition as a "twit").  Such imprecations may occasionally arise in private or public discourse but they are unwelcome in judicial proceedings.

(5)    Plaintiff's Contentions.

As noted, Plaintiff's Opposition consists of contentions relating to (1) Defendant's request that Plaintiff appear for an additional 3 ¼ hours of deposition testimony (Dkt. 119 at 107), (2) disagreement with Defendant's position with regard to sequential discovery, Dkt. 119 at 7-8, (3) Plaintiff's assertion that DeLuca engaged in professional

---

[12]   Nor does Defendant request Plaintiff's Affidavit be struck pursuant to Fed.R.Civ.P. 12(f) ('redundant, immaterial, impertinent, or scandalous matter" subject to striking by court or on motion).

misconduct by agreeing to represent a Plaintiff's deposition witness, Lisa Miles, one of

Plaintiff's former co-workers, Dkt. 119 at 8-9 ("the Miles deposition"), and (4) Plaintiff's

request, pursuant to Local R.Civ.P. 83.4 ("Local Rule 83.4") entitling a contemnor to an

evidentiary hearing on disputed issues of fact.  Dkt. 119 at 9.  None of these contentions

are relevant to the merits of Defendant's motion.  First, Plaintiff's assertions that

Defendant has miscalculated the time remaining available for Plaintiff's deposition as

permitted by the December 3, 2015 Order is fully rebutted by the record.  *See*

Discussion, *supra*, at 3-4.  Second, any disagreement with Defendant regarding

Defendant's discovery obligations, including scheduling Defendant's witness

depositions, should have been raised in a separate motion to compel[13] in accordance

with the Scheduling Order; such disagreement, if any, is irrelevant to Defendant's

requests for sanctions and other relief.  Third, if Plaintiff believes DeLuca has engaged

in misconduct that may have interfered with Plaintiff's conduct of the Miles deposition,

such issue should be raised in a separate motion to compel specifically addressed to

Plaintiff's contention; like Plaintiff's purported disagreement with Defendant concerning

the sequence of any remaining deposition practice in this case, it is also irrelevant to the

merits of the several requests which are the subject of Defendant's motion.  Finally, as

the court has not found Plaintiff or Housh should be held in contempt, it is unnecessary

to further address Plaintiff's request pursuant to Local Rule 83.4.

(6)   <u>Request for An Amended Scheduling Order</u>.

In light of Defendant's motion and the need to determine to what extent Plaintiff

should be required to appear for an additional deposition session to comply fully with

the December 3, 2015 Order as determined by the court, Discussion, *supra*, at 3-4; 25,

---

[13]   Under the Fourth Amended Scheduling Order, Dkt. 84, all motions to compel were to be filed by April 1, 2016.  Dkt. 84 ¶ 1.

circumstances exist to establish there is good cause to amend the Third Amended Scheduling Order as Defendant requests, including the date for filing dipositive motions, a request Plaintiff does not oppose.  Plaintiff's Opposition ¶ 54.  Accordingly, Defendant's motion as to this ground should be GRANTED; the parties shall submit, jointly or individually, a proposed fourth amended scheduling order <u>within</u> <u>five</u> <u>days</u> of this Decision and Order.

(7)     <u>Defendant's Request for Attorneys Fees</u>.

As found by the court, the record supports finding Defendant is entitled to an additional three and one-quarter hours of Plaintiff's deposition testimony, including providing responses to 11 of Defendant's questions Plaintiff previously refused to answer, and a finding that Plaintiff's counsel's conduct in multiple ways constituted violations of Rule 30(d)(2) and the court's Deposition Guidelines rendering such violations subject to sanctions pursuant to Rule 16(f)(1)(C), Rule 30(d)(2), and the court's inherent power as the court has determined.  Accordingly, Plaintiff shall show cause <u>within</u> <u>20</u> <u>days</u> of this Decision and Order why the expenses, including reasonable attorneys fees, incurred by Defendant in connection with Defendant's motion should not be awarded against Plaintiff, Plaintiff's counsel or both.

**CONCLUSION**

Based on the foregoing, Defendant's motion (Dkt. 112) is GRANTED in part, and DENIED in part.  The fines levied herein against Housh, Plaintiff's counsel, <u>in</u> <u>the</u> <u>amount</u> <u>of</u> <u>$4,800</u> shall be paid to the Clerk of Court <u>within</u> <u>30</u> <u>days</u>.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  January 4, 2017
        Buffalo, New York